IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EARGO, INC. SECURITIES LITIGATION<br><br>This document relates to all consolidated cases. | Case No. 21-cv-8597-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Re: Dkt. 111 |

Earlier this year, the Court dismissed the Plaintiffs' securities case because the consolidated complaint failed to plead with particularity certain facts establishing contemporaneous false statements or scienter. See In re Eargo, Inc. Sec. Litig., 2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) (dkt. 103).[1] In this case, the Plaintiffs allege that Eargo, Inc., an online direct-to-consumer hearing aid company, its corporate executives, directors, and IPO underwriters falsely or misleadingly inflated Eargo's revenue and growth opportunities because the company's business model was incompatible with the requirements for federal insurance reimbursement. The Plaintiffs also claim that Eargo falsely or misleadingly downplayed an insurance audit, which eventually became the subject of a Department of Justice investigation for insurance fraud.

The Plaintiffs have now filed a second amended complaint (SAC), primarily adding information from Eargo's document production to the DOJ in the insurance fraud investigation.[2] The new pleading, however, suffers from the same pitfalls identified in the

---

[1] The Court's prior Order on the motion to dismiss the consolidated amended complaint is incorporated herein. Only new arguments will be addressed in this Order.

[2] The Defendants' request for judicial notice of Eargo's SEC filings and transcripts

Court's prior order.[3]

For starters, the Plaintiffs still fail to plead scienter to support a Section 10(b) claim under the Exchange Act. As the Court previously explained, to demonstrate scienter, a complaint must allege that the defendants made "false or misleading statements either intentionally or with deliberate recklessness." Order at 22–23 (citing Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009)). Deliberate recklessness is "an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Id. (citing Schueneman v. Arena Pharms., Inc., 840 F.3d 698, 705 (9th Cir. 2016)).

The Court previously explained that the "Plaintiffs [did] not allege facts showing that any Eargo Defendants sold stocks during the Class Period, and the absence of such insider trading 'supports an inference of no scienter.'" Order at 23 (quoting In re Rigel Pharm., Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir. 2012)). The SAC now states that Defendant Laponis (Eargo's CFO) sold $405,000 and Defendant Gormsen (Eargo's CEO) sold $65,000 worth of Eargo stock in the Class Period. SAC ¶¶ 238–41. But these sales appear non-discretionary—that is, they were made either to cover tax obligations or under a Rule 10b5-1 trading plan. See Defs.' Exs. N, O, P. Non-discretionary trades generally "do[ ] not support an inference of scienter." See, e.g., Park v. GoPro, Inc., 2019 WL 1231175, at *23 (N.D. Cal. Mar. 15, 2019) (Chen, J.); City of Royal Oak Ret. Sys. v. Juniper Networks, Inc., 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012) ("[I]nnocent, alternative explanation for the stock sales negates an inference of scienter.") (Koh, J.).

---

from earning calls and investor conferences (dkt. 113) is **GRANTED**. SEC filings "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b). Furthermore, the Court may take judicial notice of documents that are heavily referenced in the complaint, including certain DOJ productions. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). To be sure, the Court does not take judicial notice to resolve any factual disputes.

[3] The Court finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), and **VACATES** the hearing currently set for September 29, 2023.

2

What is more, Gormsen and Laponis <u>increased</u> their Eargo holdings during the Class Period. <u>See</u> Defs.' Exs. Q, P. This further negates any inference that they sought to avoid losing money before a price decline resulting from the insurance audits. <u>See</u> <u>In re Biogen Inc. Sec. Litig.</u>, 857 F.3d 34, 44 (1st Cir. 2017) (holding that insiders' increase in stock holdings and the fact that they "suffered losses as a result of [the company's] decline in stock price . . . cuts against scienter").

The Plaintiffs also add to the SAC statements from a former Eargo employee (FE3), a licensed audiologist. SAC ¶¶ 471–74. FE3 stated, among other things, that Eargo's online hearing tool "should have never been used for insurance purposes" because it could not determine the type or severity of hearing loss. <u>Id.</u> ¶ 471. FE3 also had conversations with managers and vice presidents at Eargo questioning the company's insurance billing practices, but the managers allegedly told FE3 "not to worry about it." <u>Id.</u> ¶ 473. Such statements from FE3, however, do not save the Plaintiffs' Section 10(b) claim because there are no allegations that FE3 spoke with the Defendants. <u>See</u> Order at 15–16. As the Court previously explained, it is not enough, for purpose of pleading a securities fraud claim, that different people have different interpretations of what certain insurance policy covers. <u>Id.</u> at 13.

Among the newly added documents to the SAC is a September 2020 PowerPoint slide, created by Eargo's Senior Director for Strategic Reimbursement and Access, entitled "Insurance Risks." SAC ¶¶ 444–46. The slide notes that certain risks that Eargo generally faces are perhaps an overreliance on Blue Cross Blue Shield, which processes around 80-percent of Eargo's claims, and "coding/billing, any plans that require Rx or hearing test or other specific payer policy, scrutiny of documentation." <u>Id.</u> ¶ 446. The slide offers mitigation advices, such as "participate in additional BCBS networks . . . , make concessions toward reducing return %, nurture and develop relationship with Blue Shield of CA," and "on-going compliance review and assessment, evolving our billing practices to ensure they are in line with pay policy." <u>Id.</u> The Plaintiffs characterize this slide as some sort of "smoking gun" evidence of fraud and scienter—it is not. The risks identified

3

in this slide are generally applicable to any entity submitting insurance claims. And the slide does not even suggest that any insurance company had told Eargo that its insurance submissions did not meet policy requirements.

The January 2021 email between two Eargo employees discussing Anthem's insurance requirements also does not establish fraud or scienter. The employees simply discussed that prospective Anthem insurance holders visit "an Anthem BCBS provider for a complete hearing test and then take a copy of the results to order Eargo." Id. ¶ 82. This does not show that any executive Defendants knew that Eargo's claims would be rejected by BCBS because customers used Eargo's online, "do-it-yourself" hearing tests.

Finally, the communications between Eargo's chief legal officer and Blue Shield of California's associate general counsel simply show both entities' effort to align Eargo's telecare business model with BCBS's insurance policy requirements. Blue Shield "suggest[ed] [ ] that Eargo come up with a way to do some form of testing that can be documented and submitted evidencing medical necessity for hearing aids." MTD, Ex. J. And once Eargo does, Blue Shield said Eargo "can present it to our group and see what the clinician says." Id. Contrary to the Plaintiffs' argument, the emails between the legal counsel of both companies do not show that Defendants Laponis and Gormsen acted with scienter—that is, they believed or were deliberately reckless in disbelieving that Eargo's insurance claims were false or improper.[4] Rather, the emails document Eargo's attempt to explain to Blue Shield why it believes that its business model comports with insurance requirements.

Accordingly, because the Plaintiffs fail to plead with particularity the required element of scienter, the Section 10(b) claim under the Exchange Act is dismissed, again.

Furthermore, the Plaintiffs' new allegations from before Eargo's IPO to support their Securities Act claim generally come from the September 2020 PowerPoint slide and an August 2020 email from Laponis asking an employee to "come ready to answer" certain

---

[4] To the extent the Plaintiffs argue that an inference of "corporate scienter" should apply, see SAC ¶¶ 242–43, the Ninth Circuit "has not adopted the corporate scienter doctrine." Nozak v. N. Dynasty Minerals Ltd., 804 F. App'x 732, 734 (9th Cir. 2020).

questions about revenue recognition, see SAC ¶ 204.  But again, that slide highlights only general risks with accepting insurances.  It does not establish that those risks, as of September 2020, already materialized insofar that it would render statements in the IPO Offering Documents materially false or misleading.  And Laponis's email concerned revenue recognition with respect to accounting for product returns if they are returned "at the end of the 45 day trial window" for the hearing aid.  The email does not show that Laponis somehow knew Eargo's products were ineligible for insurance reimbursements or that such revenue should not be recognized in public filings.  These new allegations therefore do not support the Plaintiffs' Section 11 claim.

\*   \*   \*

Based on the foregoing reasons, the Court **GRANTS** the Defendants' motion to dismiss the SAC without prejudice.  Should the Plaintiffs elect to file a third amended complaint curing the deficiencies identified in this Order, the Plaintiffs shall do so within 30 days of this Order.  Failure to meet the 30-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of the Plaintiffs' claims.  The Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: August 31, 2023

CHARLES R. BREYER
United States District Judge